## PERRY v. ADERHOLD, Warden.

### No. 226.

District Court, N. D. Georgia, Atlanta Division. Jan. 15, 1932.

Joe E. Perry, in pro. per.

Hal Lindsay, Asst. U. S. Atty., of Atlanta, Ga., for respondent.

UNDERWOOD, District Judge.

The petitioner was charged under two separate and distinct indictments. He was tried before a jury and convicted on the first indictment and given a sentence of 18 months in the penitentiary. Thereafter he was tried and convicted on the second indictment, and given a sentence of 18 months, the latter sentence "to commence after the expiration of sentence under No. 134," that is, the sentence imposed on the first indictment. Separate commitments were issued on the two judgments, and petitioner was confined in the penitentiary at Atlanta, Ga. He had served the sentence under the first indictment, and some four months on the second when he was released on parole. For violation of his parole he was returned to the penitentiary to complete the service of the second sentence, and deductions for good time were disallowed under the first sentence, which had been completely served, as well as under the second sentence.

The petition for habeas corpus is based on the grounds that: (1) Petitioner "has now served his two sentences and has fully complied with all the requirements of law; (2) A prisoner cannot be deprived of the good time deduction allowed him by law upon a sentence which he had served in full for infringement of the rules committed while he was serving a second or subsequent and wholly different sentence."

Petitioner has completely served the two sentences, provided deductions are allowed for good behavior earned under the first sentence, even though not allowed on the second:

The statute granting deductions for good conduct provides that the prisoner "shall be entitled to a deduction from the term of his sentence to be estimated" in accordance with

a detailed schedule which is set out. 18 USCA § 710.

■ This statute gives to the prisoner a right which can not be arbitrarily taken from him, though certain authorities are vested with a sound discretion with respect to the determination of whether or not the prisoner's conduct entitles him to the allowance. This right is one that the trial judge takes into consideration when imposing sentence, and its length is affected thereby.

If the statute stopped here, there would be no difficulty about the question presented in this case, but in a later clause the statute provides that, "when a prisoner has two or more sentences, the aggregate of his several sentences shall be the basis upon which his deduction shall be estimated."

Respondent maintains that, under this language as construed in Ebeling v. Biddle (C. C. A.) 291 F. 567, petitioner has forfeited his right to deductions earned under the first sentence because of misbehavior occurring while serving the second, and therefore must serve both sentences in full without any deductions whatever.

The statute is ambiguous and subject to such construction, but I do not think it is the correct construction nor what Congress intended.

It is presumed that the statute was passed to accomplish two purposes: One to promote good conduct on the part of prisoners as an aid in the administration of penal institutions, and, second, to encourage such conduct as a means of reforming the prisoner.

It is remedial in its character and should not be construed to take away, in a subsequent clause, what a previous provision had created as a right "which the prisoner shall be entitled to," unless such construction is clearly demanded.

I think the clause in question was added, not to abridge a right that had been granted to the prisoner, but to extend it to his advantage; that it was not intended to take away a deduction he had already earned under a completed sentence, but to increase the allowance, if his good conduct during the service of the second sentence justified it, by giving him the benefit of the larger deduction resulting where the allowance is "estimated" on the "basis" of the "aggregate of his several sentences."

The law is very strict with reference to the imposition of separate sentences for offenses made technically distinct by law, though actually constituting but a single transaction. For example, in the recent decision of Albrecht v. United States, 273 U. S. 1, 47 S. Ct. 250, 71 L. Ed. 505, the Supreme Court held that possessing and selling the same liquor constituted separate and distinct offenses for which double penalties could be imposed. A similar ruling was made by the Supreme Court in Blockburger v. United States, 52 S. Ct. 180, 76 L. Ed. ——, decided January 4, 1932, with respect to the sale of morphine.

It would seem, therefore, that the same meticulous care should be exercised where the case works the other way, and that the prisoner should have the benefit of this separation of sentences, when the question of good conduct allowances is involved.

In other words, it would seem that, when one has been convicted of a separate and distinct offense and has been given a separate sentence and sent to the penitentiary upon a separate commitment and has served that sentence in an exemplary manner, there should be an end of the business, and the sentence should not be increased retroactively by something he may do subsequently while serving an entirely different sentence. I think that this result should necessarily follow unless the language of the statute demands a contrary construction.

If the law is so construed as to wipe out all deductions for good behavior supposed to have been earned on past sentences at or near the end of service of the last sentence, there probably would result such embitterment and feeling of injustice as would not be conducive to good discipline and order nor tend to prepare the prisoner for re-entry into society.

It seems that, in accordance with the best thought on the subject, the present trend is toward treatment that will maintain, as far as possible, the self-respect and hope of the prisoner, and a feeling on his part that he has been fairly and justly treated. Such feelings promote co-operation and reformation, while feelings of resentment and injustice create unrest, weaken discipline, and unfit the prisoner for release.

I am of opinion that the statute should be given the liberal and humane construction above placed upon it, which I think is the natural one and what Congress intended.

Petitioner having, under this construction of the statute, fully served both sentences, an order has been passed directing that he be discharged from custody.